**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CERTAIN UNDERWRITERS AT LLOYDS, LONDON THAT SUBSCRIBE TO CERTIFICATE NO. B1234HISINC2023, AS SUBROGEE OF H.C. PODY COMPANY,** | : : : : : | **CIVIL ACTION** |
| Plaintiff, | : : | |
| v. | : : | **NO. 26-831** |
| **IAG CONSTRUCTION, INC. and PENNONI ASSOCIATES, INC.,** | : : : | |
| Defendants. | : : | |

**Perez, J.**                                                                                              **June 30, 2026**

This case arises from Pennoni Associates, Inc.'s ("Pennoni" or "Defendant") inspection of the construction of the Garden Court Plaza Apartments ("Project"). H.C. Pody Company ("Pody" or the "Insured"), the general contractor for the Project, hired Pennoni to inspect work done on the Project by IAG Construction, Inc. ("IAG"). Pennoni allegedly failed to identify several defects, resulting in approximately $1.6 million in remediation costs and damages for Pody. In June 2024, Pody sued Pennoni in the Philadelphia County Court of Common Pleas, for negligent misrepresentation (the "State Lawsuit"). While the State Lawsuit was ongoing, Pody's insurance carrier Certain Underwriters at Lloyds ("Hiscox" or the "Insurer") reimbursed Pody for a majority of its loss. Just over one year later, Pody voluntarily dismissed its claims against Pennoni with prejudice. Two months later, the Insurer filed the instant suit against the same Defendant asserting claims for negligent misrepresentation and general negligence arising from the same construction defects. Before the Court is Pennoni's Motion to Dismiss based on claim preclusion (*res judicata*) and issue preclusion (collateral estoppel). For the reasons below, Pennoni's motion is granted.

1

## I.      BACKGROUND

### A.  Factual Background

The Insured, a construction company, served as the general contractor for the construction of the Garden Court Plaza Apartments in 2022. ECF No. 1 at 2–3 ¶ 11. The Insured purchased a General Contractors Professional Liability Policy ("Policy") from Lloyds, and Hiscox (or the "Insurer") subscribed to the Policy. *Id.* at 1.

On August 15, 2022, the Insured subcontracted with IAG to perform certain work on the Project. *Id.* at 6. When IAG failed to perform its work promptly or diligently, the Insured terminated the subcontract. *Id.* Thereafter, the Insured hired Pennoni to verify and inspect IAG's work. *Id.* at 1, 7. Pennoni repeatedly confirmed that IAG's work was completed correctly. *Id.* at 7. However, the Insured later discovered issues with several areas of the construction. *Id.* at 7–8.

As a result of Pennoni's failure to catch and report structural issues in the construction, the Insured had to hire another subcontractor to remediate the defective construction. *Id.* The Insured incurred over $1.6 million in both remediation costs and damages. ECF No. 18-1 at 2. In April 2024, the Insured submitted a claim to the Insurer under the Policy for coverage of $1,298,746.40 in remediation costs. ECF No. 18-1 at 2.

On June 7, 2024, the Insured also sued IAG and Pennoni in the State Lawsuit. ECF No. 9 at 4. The State Lawsuit raised one count of breach of contract against IAG and one count of negligent misrepresentation against Pennoni for its alleged negligent misrepresentation of the quality of IAG's construction work. ECF No. 9 at 4; ECF No. 18-1 at 6. IAG failed to respond to the State Lawsuit, and the Insured obtained a default judgment against it. ECF No. 18-1 at 2. The litigation continued between the Insured and Pennoni, however.

At some point before November 20, 2024, the Insurer reimbursed the Insured for the remediation costs, which represented all but approximately $300,000 in its losses. ECF No. 1 at 8 ¶ 37. Over one year later and after exchanging discovery, on November 10, 2025, the Insured and Pennoni jointly stipulated to dismiss the claims against Pennoni with prejudice. On December 8, 2025, the Court of Common Pleas entered an order dismissing the Insured's claims against Pennoni with prejudice. ECF No. 9 at 4.

On February 9, 2026, the Insurer filed this lawsuit against Pennoni, based on the same allegedly negligent work it performed on the Project and seeking to recover what it paid to the Insured under the Policy. On March 19, 2026, Pennoni moved to dismiss the Insurer's claims against it (the "Motion"), arguing that they are barred by *res judicata* and collateral estoppel. ECF No. 9. On April 23, 2026, the Insurer responded in opposition. ECF No. 18. On April 29, 2026, Pennoni filed a reply. ECF No. 19. The Motion is now ripe for review.

## II.  DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts evaluate the sufficiency of a complaint using a three-step framework: they identify the elements of the claim, disregard conclusory allegations, and then determine whether the remaining well-pleaded facts plausibly establish entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

The doctrine of *res judicata* or claim preclusion "prevents claims between the same parties from being litigated anew after a final judgment has been entered in a previous suit." *Toscano v. Connecticut Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008). A claim does not need to have

been litigated to be precluded; it is sufficient for preclusion purposes that the claim *could have been raised* in the prior proceeding. *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). Accordingly, *res judicata* bars a claim when three elements are present: "1) a final judgment on the merits in a prior suit involving 2) the same parties or their privies and 3) a subsequent suit based on the same cause of action." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).[1] The party raising the defense of claim preclusion bears the burden of proving each element. *Id.*

Preclusion rules are subject to constitutional limits. Particularly, state preclusion rules cannot cause a party to be bound by a judgment in litigation to which they were not a party, *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793 (1996), because generally, a nonparty to a prior lawsuit has not had a "full and fair opportunity to litigate" the claims and issues decided in that action, *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks omitted). Thus, the application of claim and issue preclusion to nonparties goes against the "deep-rooted historic tradition that everyone should have his own day in court." *Richards*, 517 U.S. at 798. However, there are notable exceptions to this general nonparty rule. Particularly, if it can be said that there is "privity" between the party in the second case and the party bound by earlier judgment, preclusion can apply to bind the later party to the prior judgment. *Id.* Further, even if a party is not

---

[1] Federal courts sitting in diversity apply the claim preclusion rules of the forum state. *Feldman v. Am. Asset Fin., LLC*, 534 B.R. 627 (E.D. Pa. 2015) (citing *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir. 1999)). While Pennsylvania law for *res judicata* would generally apply here, both parties rely on the federal common law test. ECF No. 9 at 9; ECF No. 18-1 at 4-8. Regardless, the same analysis largely applies under the Pennsylvania test for *res judicata*, which requires the concurrence of four conditions: 1) the identity of the thing sued upon; 2) the identity of the cause of action; 3) the identity of the persons and parties to the action; and 4) the identity of the quality or capacity of the parties suing or sued. *Stevenson v. Silverman*, 417 Pa. 187, 190 A.2d 786 (1965). The Pennsylvania test additionally requires that the prior judgment be final on the merits and bars any future suit between the same parties or *their privies* on the same cause of action. *Id.* The analysis for the first and second prong of the Pennsylvania test corresponds to the analysis of the third prong of the federal test. *Id.* Additionally, the third and fourth prong of the Pennsylvania test corresponds to the analysis of the second prong of the federal test. *Id.* at 190–91.

given adequate notice, nonparties may be bound "where they are in fact adequately represented by parties who are present, or . . . the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter." *Id.* at 800-01.

### A. *Res Judicata* Is Properly Considered at the Motion to Dismiss Stage.

As an initial matter, the Court may consider the defense of *res judicata* at the motion to dismiss stage, and it may take judicial notice of the record from any previous court proceeding between the parties. *Conceicao v. Nat'l Water Main Cleaning Co.*, 650 F. App'x 134, 135 (3d Cir. 2016) (citing *Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495 (3d Cir. 1972) (per curiam)); *see also Toscano v. Conn. General Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988). The Insurer argues dismissal is *only* appropriate when claim preclusion is apparent on the face of the complaint. That is incorrect. The Third Circuit has explicitly rejected this argument, stating that the contention "that res judicata cannot be raised by motion prior to Answer . . . is without merit." *Connelly Found.*, 461 F.2d at 496. Indeed, courts in this Circuit regularly consider the record from other judicial proceedings at the motion to dismiss stage. *E.g.*, *Inofast Mfg., Inc. v. Bardsley*, 103 F. Supp. 2d 847 (E.D. Pa. 2000) (granting motion to dismiss based on *res judicata*); *Stolarick v. Keycorp*, No. 17-0593, 2017 WL 4642312, at * (E.D. Pa. Oct. 17, 2017) (same); *Joy Techs. Inc. v. N. Am. Rebuild Co., Inc.*, No. 12-0144, 2012 WL 1802023, at *4, *8 (W.D. Pa. May 15, 2012) (same); *Jennings v. Wolf*, No. 20-0148, 2021 WL 3033850, at *3 (M.D. Pa. July 19, 2021) (explaining court may consider defense of claim preclusion on a motion to dismiss but denying motion because preclusion did not apply); *Williams v. Murdoch*, 330 F.2d 745, 749 (3d Cir. 1964); *Hartmann v. Time, Inc.*, 166 F.2d 127, 131 n.3 (3d Cir. 1947). The Court will, therefore, consider the properly attached documents from the record of the State Lawsuit and Defendant's preclusion arguments.

**B. The Insurer's Claims Are Barred by *Res Judicata*.**

Res judicata bars a claim where there has been "1) a final judgment on the merits in a prior suit involving 2) the same parties or their privies and 3) a subsequent suit based on the same cause of action." *In re Mullarkey*, 536 F.3d at 225. The Court takes each element in turn.

### 1. Final Judgment on the Merits

First, for a defendant to bring a valid *res judicata* defense, there must have been a final judgment on the merits. *In re Mullarkey*, 536 F.3d at 225. Although the standard calls for a "judgment on the merits," "that term of art is confusing because it does not require an actual verdict or summary judgment . . . . The on the-merits requirement is better understood in terms of its functional equivalent: whether a dismissal is *with prejudice*." *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 610 (3d Cir. 2020) (citation omitted). Accordingly, a voluntary dismissal with prejudice is equivalent to a final judgment on the merits. *Milner v. Commc'ns Workers of Am.*, No. 90-7067, 1991 WL 147533, at *1 (E.D. Pa. Jul. 25, 1991).[2] Here, the State Lawsuit resulted in a voluntary dismissal *with prejudice* of all claims against Defendant, which the state court approved on December 8, 2025. ECF No. 9 at 4. This satisfies the first element of *res judicata*.

### 2. Same Parties or Privies

Second, the prior suit must have involved the same parties or their privies. *In re Mullarkey*, 536 F.3d at 225. "In its broadest sense, 'privity' is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Ammon v. McCloskey*, 655 A.2d 549, 554 (Pa. Super. Ct. 1995)

---

[2] In its reply, the Insurer distinguishes *Milner* because there, the same plaintiff controlled both actions, while in the present case, the ownership of the claims has changed—the Insured was the plaintiff in the State Lawsuit while the Insurer is the plaintiff here. (ECF No. 18-1 at 6.) This argument is relevant for analyzing whether the parties are in privity (the second element), but not relevant to whether there was a final judgment on the merits. *Milner*, 1991 WL 147533, at *1.

(quoting Black's Law Dictionary (5th ed. 1979)); *see also Toll Bros., Inc. v. Century Sur. Co.*, 318 F. App'x 107, 110-12 (3d Cir. 2009). Generally, an insured and insurer are in privity with each other unless they have conflicting interests. *Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 149 (3d Cir. 2007). Courts have found insureds and their insurers have conflicting interests when they seek diverging litigation outcomes, *id.* at 149-51, or when the insurer completely subrogates the insured for a specific cause of action, *State Farm Mut. Auto. Ins. Co. v. Ware's Van Storage*, 953 A.2d 568, 573 (Pa. Super. Ct. 2008).

Generally, partial subrogees (like an insurance company) may not sue a defendant when the subrogor (the insured) has already sued for the entire loss. *Ingram v. DESA*, No. 08-1326, 2008 WL 2246428, at *8 (E.D. Pa. May 30, 2008)); *see also Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973) ("[T]he partial subrogee is generally precluded from bringing a subsequent action against the defendants where a judgment has been rendered in a suit by the subrogor for the entire loss. Multiplicity of suits, one by the subrogor for his loss and one by the subrogee for the reimbursed loss, is thus prevented as fully as if joinder were compelled."); *Pace v. Gen. Elec. Co.*, 55 F.R.D. 215, 218 (W.D. Pa. 1972) ("Here the insured has sued for the entire loss. In such a case all defenses are available to the defendant and res judicata will protect a defendant from another suit.").[3] Additionally, when plaintiffs sue for their whole loss, the verdict must be understood as representing the whole loss, even if the plaintiff's alleged loss exceeds the verdict. *Stoughton v. Mfs.' Nat. Gas Co.*, 30 A. 1001 (Pa. 1895).

Here, the Insurer and Insured's interests do not conflict because they seek similar litigation outcomes. They have the same interest in recovering damages from the Defendant in the litigation.

---

[3] Joinder is closely related to *res judicata* because, in determining whether joinder is required, courts consider whether allowing separate actions would unfairly subject a defendant to multiple lawsuits involving the same claim or transaction. *Virginia Elec.*, 485 F.2d at 84.

This is especially true because the Insured initiated the lawsuit before the Insurer paid the claim. That ties into the additional reason their interests do not conflict: the Insured had a motive to continue litigating its claims against Pennoni because the Insurer only partially reimbursed its loss.

The Insurer contends that this case is analogous to *State Farm Mutual Auto Insurance Co. v. Ware's Van Storage*. ECF No. 18-1 at 9. There, the plaintiff had suffered property damage, for which his insurance company reimbursed him. *Id.* at 569–70. The court found that the insured and insurer's interests diverged following the complete reimbursement because once the insured was completely reimbursed for the property damage, it no longer had an interest in pursuing that claim. *Id.* at 573. Accordingly, the insured's lawsuit, which sought recovery for personal injury did not bar the insurer's later action against the same defendant for property damage. *Id.* By contrast, here, the Insurer only partially reimbursed the Insured for the amount of damages it suffered, so unlike *Ware's Van Storage*, the Insured had a stake in continuing the State Lawsuit to recover its full damages.

Further, the Insurer's reliance on *Ware's Van Storage* to argue that it has an independent claim from the Insured's is misplaced. ECF No. 18-1 at 5. *Ware's Van Storage* stated that the insurer only has the derivative right to pursue recovery, meaning it "can only recover damages when [its] subrogor has a legally cognizable cause of action against a third party." 953 A.2d at 573. Nowhere does *Ware's Van Storage* state that the rights are "transferred" to the insurer upon payment. Although the court does state that the insured's and insurer's interests in litigation are qualitatively dissimilar after payment is made, this assertion was based on the facts in *Ware's Van Storage* where the insured and insurer were suing for different damages (personal injury versus property damage) and there was complete subrogation on the property damage claim. *Id.* at 570–

71. Contrarily, here, the Insured and Insurer are suing for the same cause of action, and the Insurer is only partially subrogated to the Insured.

Additionally, the Insurer argues that both the Insured and Insurer are real parties of interest, entitled only to pursue recovery "to the extent of their respective interests." ECF No. 18-1 at 7. However, this understanding of "real parties of interest" runs contrary to the policy intention behind the phrase. Federal Rule of Civil Procedure 17 requires joinder of real parties in interest because an "action must be brought by a person who possesses the right to enforce the claim and who has a significant interest in the litigation." *Virginia Elec.*, 485 F.2d at 83. Rule 17's purpose "is to enable a defendant to present defenses he has against the real party in interest, to protect the defendant against a subsequent action by the party actually entitled to relief, and to ensure that the judgment will have proper res judicata effect." *Id.* at 84. Courts, therefore, treat insurers as "real parties in interest" to claims of their insureds for the purpose of providing defendants with greater protection, not for the purpose of allowing recovery by both the insurer and the insured. *Id.* at 83. Accordingly, the "real party in interest" requirement ensures that defendants are not haled into court multiple times by multiple parties for the same conduct. *Id.* at 84.

Here, the Insurer only partially covered the Insured's losses. ECF No. 9 at 12, ECF No. 18-1 at 7. It did so over one year before the Insured voluntarily dismissed its claims against Defendant. ECF No. 18-1 at 2. Moreover, the Insured sued Defendant for its entire loss (suing for damages including and in excess of remediation costs), not just for the remainder that the Insurer did not cover. ECF No. 9 at 11-12. The Insurer is barred from suing for the same loss because it is in privity with the Insured. *Ingram*, 2008 WL 2246428, at *8 ("[A] partial subrogee . . . is generally precluded from bringing a subsequent action against a defendant where a judgment has been rendered in a suit by the subrogor for the entire loss.").

### 3.    Same Cause of Action

The third element is also satisfied because the two suits are both based upon Defendant's alleged negligence in connection with the work it performed for the Insured on the Project. Analysis of the third element—whether the cases involve the same cause of action—rests upon "the essential similarity of the underlying events giving rise to the various legal claims." *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 173 (3d Cir. 2009). Courts focus on whether the acts, material facts, and evidence that will ultimately prove the claims are the same. *Id.* The purpose of this rule is threefold: (1) it protects defendants from having to defend themselves in multiple suits by the same person for a single tort; (2) "it avoids a multiplicity of suits"; and (3) it provides the most direct method of resolving all claims of a single individual arising from the same tortious act. *Spinelli v. Maxwell*, 243 A.2d 425, 427 (Pa. 1968). The rule in Pennsylvania, therefore, has long been that "[i]f the cause of action is a wrongful act, . . . then all of the damages sustained thereby, whether to person or property, are properly sought in one suit." *Id.* (finding *res judicata* barred lawsuit by insured after insurer already sued for amount it paid to insured for insured's deductible).

Here, the two suits are based upon the same cause of action—negligence arising from Pennoni's inspection of IAG's work on the Project. The Insurer does not dispute this. Instead, it focuses on the fact that claim ownership had already been "transferred" prior to dismissal of the State Lawsuit. However, this question of claim ownership is relevant to the second element—whether the parties are in privity with each other—not the third. *Elkadrawy*, 584 F.3d at 173.

### III.    Conclusion

Allowing the Insurer to proceed with this action would require Defendant to defend against claims that have already been litigated and resolved. The State Lawsuit's judgment was final on the merits, the Insurer and Insured are in privity with one another, and the Insurer is alleging the

same cause of action against which Defendant already defended itself. Accordingly, the Insurer's

claims are barred by *res judicata*.[4] Defendant's Motion to Dismiss is granted.

An appropriate Order follows.

---

[4] Defendant also raises the defense of issue preclusion. The Court need not reach those arguments, however, because *res judicata* bars the entire suit.